**Dated: December 08, 2023.**

                                                        */s/ Christopher G. Bradley*
                                                  **CHRISTOPHER G. BRADLEY**
                                           **UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| WC ALAMO INDUSTRIAL CENTER, | § | Case No. 22-10226-cgb |
|     LP, Debtor. | § | (Chapter 7) |
| | § | |
| | § | |
| 639 LANARK, LLC | § | |
|     Plaintiff, | § | |
| v. | § | Adversary No. 23-01011-cgb |
| ALAMO LANARK, LLC | § | |
|     Defendant. | § | |

**ORDER DENYING**
**MOTION TO REMAND**

## Introduction

On October 4, 2023, Plaintiff 639 Lanark, LLC filed an Expedited Motion to Remand (the "Motion to Remand"),[1] seeking to remand this adversary proceeding (the "Adversary Proceeding") to state court due to a lack of subject matter jurisdiction. On October 18, 2023, Defendant Alamo Lanark, LLC filed an Objection to Plaintiff's Motion to Remand (the "Objection").[2] On November 2, 2023, the Court conducted a hearing on the Motion to Remand and took the matter under advisement.

The Court has considered the Motion to Remand, the Objection, the pleadings in this Adversary Proceeding, the evidence presented at the hearing, the record in the main bankruptcy case, and the statements and arguments of counsel. Because subject matter jurisdiction must be determined as of the date of removal, and this Court had jurisdiction at the time of removal, the motion is denied.

In addition, the Court declines to exercise its discretion to remand this case on an equitable basis, because so much time has passed since removal, and a remand at this stage, when the discovery period has passed and a summary judgment motion is briefed and pending, would prejudice the defendant and unduly delay resolution of this dispute.

## Background

The plaintiff is 639 Lanark LLC (the "Would-Be Buyer"), and the defendant is Alamo Lanark, LLC (together with its predecessor in interest,[3] the "Lender"). The debtor in this bankruptcy case is WC Alamo Industrial Center, LP (the "Debtor"). Before the bankruptcy commenced, the Debtor owned real estate at 635-639 Lanark Dr., San Antonio, Texas 78218 (the "Property"). The Debtor owed the Lender several million dollars on a note secured by a deed of trust on the Property in favor of Lender.[4] By mid-2020, the note was apparently in default.

---

[1] Adv. Proc. Dkt. No. 12. Docket entry citations to this Adversary Proceeding are denoted with "Adv. Proc.," and those of the main bankruptcy case with "Main Case."
[2] Adv. Proc. Dkt. No. 19.
[3] The original lender, Amplify Credit Union, apparently assigned its interests to Alamo Lanark, LLC in September of 2020. *See* Adv. Proc. Dkt. No. 11, ¶ 7.
[4] Unless otherwise noted, the facts in this opinion are either uncontested or are taken as alleged by the Would-Be Buyer. The Court's statement of facts does not represent its findings for any other purposes than determination of this Motion to Remand.

The Would-Be Buyer entered into a contract (the "Contract") to purchase the Property from the Debtor for $3,986,000 on November 12, 2020. In preparation for closing, the Debtor contacted the Lender to establish a payoff amount and prepare to release the existing lien.

In this Adversary Proceeding, the Would-Be Buyer alleges that the Lender tortiously interfered with the Contract by imposing unreasonable conditions, seeking reimbursement for excessive and unreasonable fees, and generally obstructing the transaction. The Debtor also sued for the Lender's "wrongful acts" in a state court lawsuit in February of 2021.[5] The Would-Be Buyer intervened in this lawsuit the day after it was filed, stating among other things that the Lender's conduct "constitutes tortious interference" in the Contract between the Debtor and the Would-Be Buyer.[6]

The Lender contends that it was under no duty to cooperate as requested, and that in any case, it acted in a commercially reasonable fashion.

At any rate, the transaction between the Would-Be Buyer and the Debtor did not go through. Meanwhile, the Lender repeatedly posted the Property for foreclosure,[7] and a foreclosure sale was imminent when, on April 4, 2022, the Debtor filed for relief in a Chapter 11 bankruptcy proceeding, staying the foreclosure. The Court first appointed a trustee (the "Trustee") and then converted the case from Chapter 11 into a Chapter 7 liquidation.[8] Ultimately, in November of 2022, the Property was sold for $5,288,000 to a different buyer, with the approval of this Court.[9]

---

[5] *WC Alamo Industrial Center, LP v. Alamo Lanark, LLC*, Cause No. 2021-CI-03565 in the 288th District Court in Bexar County, Texas. The original petition in this case is attached to the Objection. Adv. Proc. Dkt. No. 19, Exh. A. Among other things, the petition seeks relief for breach of contract, intentional interference with existing contract, and intentional interference with prospective business relationship, all essentially revolving around the alleged refusal to release the lien without improper conditions.

[6] Adv. Proc. Dkt. No. 19, Exh. B.

[7] According to the Lender's Motion for Summary Judgment, the Property was posted for foreclosure sales to be held on November and December of 2020, as well as January and April of 2021. Adv. Proc. Dkt. No. 11, ¶¶ 7, 10.

[8] Main Case Dkt. Nos. 54 (trustee appointment), 70 (conversion as of May 20, 2022). The Trustee remained the same after the conversion of the case.

[9] Main Case Dkt. No. 151 (order approving sale).

The Lender filed a claim in the Debtor's bankruptcy for the amount it claimed it was owed on its note.[10] The Debtor objected to this claim on several bases, including that the Lender "wrongfully interfered with Debtor's exercise of its contractual right" to pay off its obligations to Lender, "prevented Debtor from closing" the sale of the Property pursuant to the Contract with the Would-Be Buyer by "refusing to provide an accurate payoff, refusing to provide support for its inflated payoff amount, and refusing to provide valid closing instructions," including instructions for a proper release of its lien; and that these actions damaged the Debtor by forcing it into bankruptcy.[11] In January of 2023, the Court denied the Debtor's objection, finding the Debtor lacked standing to object.[12] The general partner of the Debtor, WC Alamo Industrial Center GP (the "General Partner"), urged the same objection.[13] In June of 2023, the Lender filed a motion for summary judgment on the General Partner's objection,[14] but the General Partner withdrew it later that month before the Court ruled on it. In its notice of withdrawal, the General Partner expressed an intention to pursue claims against the Lender in a separate proceeding.[15]

Subsequently, on August 10, 2023, the Would-Be Buyer also filed a claim in the Debtor's bankruptcy for $1,355,302.[16] The claim, which was untimely and therefore given a lower payment priority than similarly situated claimants,[17] is based on the Debtor's alleged breach of the Contract and seeks to recover the difference in the value between the agreed-upon purchase price in the Contract and the eventual sale price based upon the failure to consummate the sale allegedly caused by the Lender. This proof of claim also states that "[b]ased upon information and belief, the failure to consummate the sale was directly caused by the Debtor's lender, Alamo Lanark, LLC's tortious interference with the Contract."[18]

---

[10] *See* Proof of Claim Nos. 8-1, 8-2. The initial claim was filed in August of 2022, and it was amended in November of that year.
[11] Main Case Dkt. No. 140, ¶ 4.
[12] Main Case Dkt. No. 188 (order denying claim).
[13] Main Case Dkt. Nos. 183 (joining Debtor's objection), 202 (urging the objection after Debtor's objection had been denied for lack of standing).
[14] *See* Main Case Dkt. No. 285.
[15] Main Case Dkt. No. 293 (withdrawing objection without prejudice and stating an intention either to pursue Lender in a separate adversary proceeding or to purchase the bankruptcy estate's claim against Lender).
[16] *See* Proof of Claim No. 11.
[17] *See* 11 U.S.C. § 726(a).
[18] Proof of Claim No. 11, Attachment, ¶ 2.

On July 19, 2023, the Trustee filed a motion seeking court approval of a settlement (the "Settlement") with the Lender, settling the bankruptcy estate claims against the Lender and the Lender's claims against the estate.[19] The Settlement provided for the allowance of the Lender's claims in the amount of approximately $4.5 million, although a little more than half a million dollars of those claims would be subordinated to certain claims of creditors in the bankruptcy and the costs of administration.[20] The Settlement specifically released the Lender and its affiliates from all claims held by the bankruptcy estate, including the claims that had been asserted by the Debtor in the Debtor's state court suit against the Lender (which of course belonged to the estate[21]). The Settlement was contested by the General Partner.[22] After a hearing, the Court entered an order approving the Settlement, finding that the Settlement was in the best interest of the bankruptcy estate.[23] Among other things, the Court noted that the Settlement included a release of the Debtor's claim that "the Lender interfered with the Debtor's right to pay off the note by failing to provide the Debtor with a timely and accurate payoff statement and by wrongfully requiring that the Debtor give a release to Lender and its affiliates of all claims as part of the payoff and release of lien."[24]

Turning back to events that began outside of bankruptcy court: in January of 2023, the Would-Be Buyer sued the Lender in the 285th District Court of Bexar County, Texas, seeking the difference between the Contract price for the Property and the price the Property fetched in bankruptcy, on a theory of tortious interference with contract.[25] It appears that aside from some filings related to service and the extension of response deadlines, there were no proceedings in state court.[26] The

---

[19] Motion for Entry of an Order (I) Approving Compromise Pursuant to Rule 9019 and (II) Granting Related Relief, Main Case Dkt. No. 308.

[20] In particular, the Settlement provided for the allowance of the Lender's pre-petition claim of $3,477,754; the Lender's Chapter 11 §506(b) claim in the amount of $134,454 for post-petition default interest, fees, and expenses; the Lender's Pre-Closing Chapter 7 §506(b) claim in the amount of $361,740 for post-petition default interest, fees, and expenses; and the Lender's unpaid Post-Closing §506(b) claim for at least $537,765, provided that this last claim would be subordinated to payment of timely filed general unsecured claims of non-insiders and the Chapter 7 administrative expenses of the Trustee and his professionals. *Id*.

[21] *See* 11 U.S.C. §541(a)(1).

[22] *See* Main Case Dkt. No. 310.

[23] Main Case Dkt. Nos. 337, 339.

[24] Main Case Dkt. 340, Tr. at 25.

[25] *See* Adv. Proc. Dkt. No. 1, Exh. 2.

[26] *See* Adv. Proc. Dkt. No. 1, Exh. 1.

Lender removed the case to federal court on April 3, 2023.[27] The Lender asserted that removal was appropriate because this action was "related to" the bankruptcy within the meaning of 28 U.S.C. §1334(b). The removed action was automatically referred to this Court.[28]

On September 7, 2023, the Court entered a scheduling order pursuant to which discovery was to be completed by November 29, 2023.[29] The scheduling order set docket call for trial on February 7, 2024.[30] The Lender filed a motion for summary judgment on September 29, 2023.[31]

The Would-Be Buyer filed its Motion to Remand on October 4, 2023.[32] Our local bankruptcy rules require motions to remand be filed within thirty days of the filing of the notice of removal.[33]

The Motion to Remand was therefore untimely by five months. But as is often repeated, a challenge to subject matter jurisdiction cannot be waived.[34] And if the Court were to deny the motion to remand on the basis of untimeliness, the Would-Be Buyer could likely find another way to raise it, perhaps by a motion to dismiss,[35] which would evoke the same analysis. So, the Court has considered this motion—though extremely untimely—on its merits.

---

[27] Dkt. No. 1. *See* 28 U.S.C. §1452(b) (providing for the removal of civil actions to the federal district court for the district in which the matter is pending, provided that the federal district court has jurisdiction under 28 U.S.C. §1334). The Lender's notice of removal was filed with the bankruptcy court, as required by Bankruptcy Local Rule 9027(b).
[28] *See* Order of Reference of Bankruptcy Cases and Proceedings (W.D. Tex. Oct. 4, 2013).
[29] Dkt. No. 9.
[30] *Id.*
[31] Dkt. No. 11.
[32] Dkt. No. 12.
[33] Bankr. L.R. 9027(b).
[34] *See, e.g.*, *The Lamar Co., L.L.C. v. Mississippi Transportation Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)).
[35] *See* Fed. R. Civ. P. 12(b)(1).

**Analysis**

**A. Subject matter jurisdiction is assessed at the time of removal.**

Numerous binding authorities state that subject matter jurisdiction is assessed "when the jurisdiction of the federal court is invoked."[36] This has been described as "hornbook law."[37]

Here, the jurisdiction of this Court was invoked at the time of removal (or to be more precise, when the case removed to the federal district court was referred to the bankruptcy court, which happens automatically by operation of a standing order in this district).[38] Thus, the relevant question is whether, as of April 3, 2023, there was federal subject matter jurisdiction over this matter.

**B. When removed, the case was plainly "related to" the bankruptcy.**

In addition to having original and exclusive jurisdiction over main bankruptcy cases, federal district courts also have original but not exclusive jurisdiction over three categories of other proceedings: (1) civil proceedings "arising under" the Bankruptcy Code; (2) civil proceedings "arising in" a bankruptcy case; and (3) civil proceedings "related to" a bankruptcy case.[39] Federal district courts can refer these cases to a bankruptcy court, as our district court has done.[40]

Generally, "related to" jurisdiction over a civil proceeding is the broadest grant of bankruptcy jurisdiction.[41] In the Fifth Circuit, a civil proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could *conceivably* have any

---

[36] *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 586 n. 29 (5th Cir. 1999) (collecting cases).
[37] *Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.,* 936 F.3d 260, 263 (5th Cir. 2019) (describing this rule as "hornbook law" and applying it to explain "what happens if a lawsuit, when filed, is related to a bankruptcy, but then something happens that dissolves the bankruptcy connection").
[38] *See* Order of Reference of Bankruptcy Cases and Proceedings (W.D. Tex. Oct. 4, 2013).
[39] 28 U.S.C. §1334(b); *Lain v. Watt (In re Dune Energy, Inc.)*, 575 B.R. 716, 723 (Bankr. W.D. Tex. 2017).
[40] *See* 11 U.S.C. §157(a); Order of Reference of Bankruptcy Cases and Proceedings (W.D. Tex. Oct. 4, 2013).
[41] *Dune Energy,* 575 B.R. at 723.

effect on the estate being administered in bankruptcy."[42] "A 'conceivable effect' in this context is any that *could* alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which *in any way* impacts upon the handling and administration of the bankrupt estate."[43] Certainty that the event will occur or even a likelihood of its occurring is not a requirement.[44]

At the time of removal, the outcome of the Adversary Proceeding had a significant chance of altering the estate's rights and the administration of the bankruptcy estate. Amid the complicated timeline of this case, it is easy to get lost. As of April 3, 2023, when this case was removed, the objection of the General Partner to the Lender's claim in the bankruptcy proceeding remained pending. The bases for this objection overlapped considerably with the claims by Would-Be Buyer against the Lender in this Adversary Proceeding. They also overlapped with the claims brought by the Debtor in the state court lawsuit that was also still pending and that was property of the bankruptcy estate.

These claims and actions share centrally relevant facts, and the outcome in any one of them affects the others. The Lender's conduct with respect to the Contract was at issue in each,[45] and it was certainly "conceivable" that the outcome in the Would-Be Buyer's suit would affect the bankruptcy estate in several concrete ways.

The most obvious potential effect of this litigation was that it would affect Would-Be Buyer's claim for breach of contract in the main bankruptcy case.[46] The

---

[42] *Fire Eagle L.L.C. v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 304 (5th Cir. 2013) (emphasis added); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (emphasis in original).

[43] *Spillman Dev. Grp.*, 710 F.3d at 304 (emphasis in original).

[44] *See, e.g., In re Hidalgo Logistics, LLC*, No. 13-70239, 2014 WL 2003216, at *6 (Bankr. S.D. Tex. May 15, 2014) (citing *Canion,* 196 F.3d at 586–587, in which the court found "related to" jurisdiction existed even though "the sequence of events that would reduce the claims against [the debtor's] bankruptcy estate was not certain to occur").

[45] This interconnectedness is vividly illustrated by the very similar filings by the Lender in response to the objection to its claim in the main bankruptcy case and the motion for summary judgment for the Lender in this Adversary Proceeding. *Compare* Main Case Dkt. No. 285 *with* Adv. Proc. Dkt. No. 11.

[46] The Bankruptcy Code's definition of "claim" is broad. *See* 11 U.S.C. §101(5). The Would-Be Buyer certainly had a plausible claim as of April of 2023. While the Would-Be Buyer had not filed a proof of claim at that point, and while the deadline to have its proof of claim deemed timely had passed, it still had the right to file a proof of claim and seek payment. *See* 11 U.S.C. §726(a)(3) (providing payment priority for certain untimely claims); *United States v. Waindel (In re Waindel*,

damages recoverable on such a claim would be profoundly affected by this litigation. The Would-Be Buyer's claim in this litigation is measured the same as the breach of contract damages ultimately asserted in its proof of claim: the difference between the Contract price for the Property and the amount that Property sold for in bankruptcy—a difference of about $1.3 million.[47]

The Would-Be Buyer could not recover the same damages both for breach of contract and for tortious interference. "[A]n injured party is entitled to but one satisfaction for a single injury."[48] Thus, if this litigation had been successful and the Would-Be Buyer had collected from the Lender, its claim in the bankruptcy would have evaporated; by contrast, if it had been unsuccessful, it would be left to seek payment from the bankruptcy estate. There was an unmistakable link between this Adversary Proceeding and the assets and administration of the bankruptcy estate.

There were other ways in which this litigation could affect the numerous, intertwined claims against the Lender held by the estate or urged in the bankruptcy case, or could have other effects on the bankruptcy estate. For example, Lender might be able to assert that any wrongful conduct was at least partially caused by Debtor, or that Debtor is an indispensable party to the Adversary Proceeding, and thus embroil the estate in additional litigation. Indeed, these possibilities are suggested in Lender's answer and motion to dismiss in this Adversary Proceeding.[49]

In sum, it is clear that even though the parties to this Adversary Proceeding are non-debtors, the dispute affected the assets and the administration of the bankruptcy estate and was "related to" the bankruptcy at the relevant time.

---

65 F.3d 1307, 1308-12 (5th Cir. 1995) (late-filed claims in a chapter 7 case "allowed" under 11 U.S.C. §§ 501 and 502 but subordinated in distribution priority to other timely filed claims pursuant to § 726(a)); *In re Miranda*, 269 B.R. 737, 743 (Bankr. S.D. Tex. 2001) (after the 1994 amendments to § 502, *Waindel* is still good law in the context of untimely claims, absent objections). Indeed, the Would-Be Buyer ultimately did file its proof of claim in August of 2023, as noted above. And while, based on subsequent events, it now appears that there may be no money to pay untimely claims like the Would-Be Buyer's, in April of 2023, there was reasonable likelihood of some payment from estate assets. *See, e.g.*, Main Case Dkt. No. 254, ¶ 1 (Trustee's filing stating, on May 15, 2023, that "[t]he Trustee has sold the Debtor's real property and currently has a surplus on hand").

[47] Adv. Proc. Dkt. No. 1, Exh. 2, ¶ 22; Proof of Claim No. 11.
[48] *Marcus, Stowell & Beye Gov't Secs., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 233 (5th Cir. 1986) (quoting *Gill v. United States*, 429 F.2d 1072, 1079 (5th Cir. 1970)).
[49] *See* Adv. Proc. Dkt. No. 2, ¶¶ 29, 31, 34.

This situation is far from unique. The Fifth Circuit, on numerous occasions, has found "related to" jurisdiction over a dispute between two non-debtor parties when the outcome of the dispute would affect the funds available to, or the claims against, the bankruptcy estate.[50] Numerous other courts have too.[51]

### C. Equitable remand is not warranted.

This Court has the authority to remand on an equitable basis sua sponte,[52] but it declines to do so under these circumstances.

It is true that this suit turns on a state law cause of action and on prepetition acts. And because one of the parties appears not to have consented to this Court's issuance of a final judgment, entry of judgment will be left to our busy federal district court (with the consideration of this Court's report and recommendation).[53] This introduces potential for delay and duplication of effort.

On the other hand, nothing substantive appears to have happened in state court prior to removal, so there is no risk of inconsistency with rulings of the state court.

---

[50] *See, e.g.*, *Edge Petrol. Operating Co. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 298 (involving a claim in which either the debtors or the purchaser owed money, "and if it was purchaser, then purchaser would have discharged a liability of the debtors and probably would file a claim against debtors' estates for reimbursement"); *Spillman Dev. Grp.*, 710 F.3d at 304–05 ("We have previously held that similar attenuated, hypothetical effects of third-party litigation can give rise to related-to bankruptcy jurisdiction."); *EOP–Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.),* 430 F.3d 260, 266–67 (5th Cir. 2005) (finding "related to" jurisdiction over third-party claims where collection on those claims could affect "the need for [a third party] to seek reimbursement from [the] bankruptcy estate").

[51] *See, e.g.*, *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995) ("Proceedings 'related to' the bankruptcy include . . . suits between third parties which have an effect on the bankruptcy estate."); *SPV Osus Ltd. V. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018) (finding "related to" jurisdiction exists when the outcome of a claim filed outside of a bankruptcy proceeding "might have any conceivable effect on" the estate of the debtor in the bankruptcy proceeding); *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Connecticut (In re Dow Corning Corp.)*, 86 F.3d 482, 490 (6th Cir. 1996) (finding "related to" jurisdiction over suits against third-party manufactures and suppliers because of the potential claims for contribution and indemnification against the Debtor).

[52] 28 U.S.C. §1452(b); *Gehan Props. II, Ltd. v. Integrated Performance Sys., Inc. (In re Performance Interconnect Corp.)*, No. 06-34482, 2007 WL 2088281, at *4 (Bankr. N.D. Tex. July 19, 2007); *Smith v. Wal–Mart Stores, Inc.*, 305 F.Supp. 2d 652, 658 n. 9 (S.D. Miss. 2003).

[53] *See* Adv. Proc. Dkt. No. 3. Neither party filed a statement regarding consent with this Court. The Lender stated it consents to entry of final orders or judgment in its Notice of Removal, Adv. Proc. Dkt. No. 1, ¶ 5. The docket does not reflect that the Would-be Buyer consents.

In addition, the interests of economy favor retention of jurisdiction. In this Court, a summary judgment motion had been filed and discovery was nearly at an end before this Motion to Remand was even filed. If summary judgment does not dispose of the matter, the case is ripe for trial. Docket call is set for February, and the Court can try the case expeditiously.

Finally, concerns of fairness and prejudice speak against remand. The Motion to Remand was filed long after the deadline for such motions established by this Court, and under the circumstances, there is no good reason for that delay. The case is sufficiently advanced that the Lender should not be sent back to state court at this stage.

The equities are clear in this matter, and remand is not warranted.

## Conclusion

For the reasons stated above, the Court finds that it had subject matter jurisdiction at the relevant time, and therefore the case should not be remanded on that basis. In addition, because remand at this stage would not be equitable, the Court will not remand on that basis.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT** the Motion to Remand is DENIED.

# # #