**Dated: January 03, 2024.**

_____
**CHRISTOPHER G. BRADLEY
UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| WC ALAMO INDUSTRIAL CENTER, | § | Case No. 22-10226-cgb |
| LP, Debtor. | § | (Chapter 7) |
| | § | |
| | § | |
| 639 LANARK, LLC | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 23-01011-cgb |
| ALAMO LANARK, LLC | § | |
| Defendant. | § | |

## OPINION AND ORDER
## GRANTING SUMMARY JUDGMENT

### Introduction

The plaintiff in this tortious interference suit is a would-be buyer of real estate in San Antonio. The defendant is a lender that held a defaulted note secured by a deed of trust on the real estate. The would-be buyer claims that its failure to purchase the real estate was caused by the lender imposing illegitimate conditions on the payoff of its loan and the release of its lien.

The lender is entitled to summary judgment because it has established the defense of justification under governing Texas law. In the absence of any contractual or other duty to do otherwise, it was entitled to exercise its contractual rights and proceed to foreclosure of the defaulted loan. It was entitled to release its lien altogether, or to impose conditions on the release of that lien. Because the lender's allegedly tortious actions were taken in the course of exercising its contractual rights, it has established the defense of justification. Summary judgment will be granted in its favor.

## Procedural Background

On September 29, 2023, Defendant Alamo Lanark, LLC filed a Motion for Summary Judgment (the "Motion for Summary Judgment").[1] On October 20, 2023, the plaintiff filed a Response to Lender's Motion for Summary Judgment (the "Response").[2] A week later, the defendant filed a Response to Plaintiff's Objection to Motion for Summary Judgment (the "Reply").[3] On December 14, 2023, the Court conducted a hearing (the "Hearing") on the Motion for Summary Judgment and took the matter under advisement.

The Court has considered the Motion for Summary Judgment, the Response, the Reply, the pleadings in this Adversary Proceeding, the evidence presented at the Hearing and attached to the briefs,[4] the record in the main bankruptcy case, and the statements and arguments of counsel.

---

[1] Adv. Proc. Dkt. No. 11. Docket entry citations to this Adversary Proceeding are denoted with "Adv. Proc.," and those of the main bankruptcy case with "Main Case."

[2] Adv. Proc. Dkt. No. 20.

[3] Adv. Proc. Dkt. No. 21.

[4] At the Hearing, the parties withdrew their objections to the admission of each other's proposed exhibits, with the exception of portions of the two declarations that the Would-Be Buyer attached to its Response. While portions of them may have been improper as conclusory or not based on personal knowledge, the Court has considered the contested declarations, and they do not affect the outcome of this case.

## Jurisdiction and Authority

This Adversary Proceeding was referred to this Court by the United States District Court for the Western District of Texas.[5] It is related to the main bankruptcy case, *In re WC Alamo Industrial Center*.[6] The Court has jurisdiction pursuant to 28 U.S.C. §§157(c)(2), 1334(b), and 1452(a). The Court has authority to issue a final judgment on this matter because both parties have consented to it doing so.[7]

## Factual Background

The plaintiff is 639 Lanark LLC (the "Would-Be Buyer"), and the defendant is Alamo Lanark, LLC (together with its predecessor in interest,[8] the "Lender"). The debtor in this bankruptcy case is WC Alamo Industrial Center, LP (the "Debtor"). Before the bankruptcy commenced, the Debtor owned real estate at 635-639 Lanark Dr., San Antonio, Texas 78218 (the "Property"). The Debtor owed the Lender several million dollars on a note secured by a deed of trust on the Property in favor of the Lender.[9] By mid-2020, the note was apparently in default.[10]

The Would-Be Buyer entered into a contract (the "Contract") to purchase the Property from the Debtor for $3,986,000 on November 12, 2020. In preparation for closing, the Debtor contacted the Lender to establish a payoff amount and prepare to release the existing lien.

The Would-Be Buyer alleges that the Lender tortiously interfered with the Contract by imposing unreasonable conditions on the release of its lien and seeking payment of excessive and unexplained fees. By contrast, the Lender contends that it was under no duty to cooperate as requested, and that in any case, it acted in a commercially reasonable fashion.

---

[5] Order of Reference of Bankruptcy Cases and Proceedings (W.D. Tex. Oct. 4, 2013).
[6] Case No. 22-10226 (Bankr. W.D. Tex.). *See 639 Lanark, LLC v. Alamo Lanark, LLC (In re WC Alamo Indus. Ctr., LP)*, No. 22-10226, 2023 WL 8531544, at *4 (Bankr. W.D. Tex. Dec. 8, 2023) (finding that this Adversary Proceeding was related to the main bankruptcy case at the time of removal).
[7] Adv. Proc. Dkt. Nos. 37, 39 (notices of consent); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674 (2015) ("[L]itigants may validly consent to adjudication by bankruptcy courts.").
[8] The original lender, Amplify Credit Union, apparently assigned its interests to Alamo Lanark, LLC in September of 2020. *See* Adv. Proc. Dkt. No. 11, ¶ 7.
[9] Unless otherwise noted, the facts in this opinion are either uncontested or are taken as alleged by the Would-Be Buyer.
[10] This is supported by evidence, *see, e.g.*, Adv. Proc. Dkt. No. 11, Exhibit A, and was not contested by the Would-Be Buyer at the Hearing.

At any rate, the transaction between the Would-Be Buyer and the Debtor did not go through. Meanwhile, the Lender repeatedly posted the Property for foreclosure,[11] and a foreclosure sale was imminent when, on April 4, 2022, the Debtor filed for relief in this bankruptcy Court, staying the foreclosure. The Court first appointed a trustee and then converted the case from Chapter 11 into a Chapter 7 liquidation.[12] Ultimately, in November of 2022, the Property was sold for $5,288,000 to a different buyer, with the approval of this Court.[13]

In January of 2023, the Would-Be Buyer sued the Lender in the 285th District Court of Bexar County, Texas, seeking the difference between the Contract price for the Property and the price the Property fetched in bankruptcy, on a theory of tortious interference with contract.[14] It appears that aside from some filings related to service and the extension of response deadlines, there were no proceedings in state court.[15] The Lender removed the case to federal court on April 3, 2023, and the Adversary Proceeding was docketed in this Court.[16]

This is not the only proceeding in which the failed Contract between the Would-Be Buyer and the Debtor, and the Lender's alleged interference with it, has been at issue.[17] There was an earlier state court lawsuit by the Debtor against the Lender, largely based on the same facts and alleged wrongdoing as this Adversary Proceeding, in which the Would-Be Buyer intervened.[18] There was also litigation against the Lender in the main bankruptcy case, seeking to disallow part of its claim due in part to the same facts and alleged wrongdoing as alleged in this Adversary

---

[11] According to the Lender's Motion for Summary Judgment, the Property was posted for foreclosure sales to be held on November and December of 2020, as well as January and April of 2021. Adv. Proc. Dkt. No. 11, ¶¶ 7, 10.

[12] Main Case Dkt. Nos. 54 (trustee appointment), 70 (conversion as of May 20, 2022). The trustee remained the same after the conversion of the case.

[13] Main Case Dkt. No. 151 (order approving sale).

[14] *See* Adv. Proc. Dkt. No. 1, Exh. 2.

[15] *See* Adv. Proc. Dkt. No. 1, Exh. 1.

[16] Adv. Proc. Dkt. No. 1. *See* 28 U.S.C. §1452(b) (providing for the removal of civil actions to the federal district court for the district in which the matter is pending, provided that the federal district court has jurisdiction under 28 U.S.C. §1334). The Lender's notice of removal was filed with the bankruptcy court, as required by Bankruptcy Local Rule 9027(b). The removed action was automatically referred to this Court. *See* Order of Reference of Bankruptcy Cases and Proceedings (W.D. Tex. Oct. 4, 2013).

[17] These other actions are discussed in the prior opinion in this matter by this Court. *See 639 Lanark, LLC*, 2023 WL 8531544, at *2-3.

[18] *WC Alamo Industrial Center, LP v. Alamo Lanark, LLC*, Cause No. 2021-CI-03565 in the 288th District Court in Bexar County, Texas.

23-01011-cgb Doc#40 Filed 01/03/24 Entered 01/03/24 15:06:04 Main Document Pg 5 of 12

Proceeding.[19] These other proceedings have been resolved, some pursuant to a settlement approved by this Court,[20] some by other decisions of the Court,[21] and some by voluntary withdrawal of objection.[22]

This Adversary Proceeding remains. On September 7, 2023, the Court entered a scheduling order pursuant to which discovery was to be completed by November 29, 2023.[23] The Lender filed this motion for summary judgment on September 29, 2023.[24] The Would-Be Buyer then sought to have the Adversary Proceeding remanded to state court, but this Court denied that motion on December 8, 2023.[25] Once summary judgment briefing was completed, the Court held the Hearing, took the matter under advisement, and now issues this Order.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment in Adversary Proceedings.[26] Summary judgment on a claim or defense is appropriate only if the movant shows there is "no genuine dispute as to any material fact," and movant is "entitled to judgment as a matter of law."[27] In sustaining this burden, a movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.[28]

Summary judgment is properly granted when "the record indicates that there is no genuine issue as to any material fact."[29] Whether a fact is material is governed

---

[19] Main Case Dkt. Nos. 140, ¶ 4 (Debtor's objection); 183 (General Partner of Debtor joining Debtor's objection), 202 (General Partner urging the objection after Debtor's objection had been denied for lack of standing).
[20] Main Case Dkt. No. 339.
[21] Main Case Dkt. No. 188 (order denying Debtor's objection on standing grounds).
[22] Main Case Dkt. No. 293.
[23] Adv. Proc. Dkt. No. 9.
[24] Adv. Proc. Dkt. No. 11.
[25] Adv. Proc. Dkt. No. 27; *639 Lanark, LLC v. Alamo Lanark, LLC (In re WC Alamo Indus. Ctr., LP)*, No. 22-10226, 2023 WL 8531544, at *7 (Bankr. W.D. Tex. Dec. 8, 2023).
[26] Rule 56 is made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.
[27] *See* Fed. R. Civ. P. 56(a).
[28] *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[29] *See, e.g., Am. Home Assurance Co. v. United Space Alliance, LLC,* 378 F.3d 482, 486 (5th Cir. 2004).

by substantive law; only facts that might affect the outcome of the suit will preclude summary judgment.[30]

In the summary judgment context, a court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."[31] As a result, the facts in the summary judgment record must be viewed in the light most favorable to the Would-Be Buyer (as non-movant) and reasonable inferences must be drawn in its favor in ruling on the Motion. When reviewing the summary judgment record, a court should also "refrain from making credibility determinations or weighing the evidence presented."[32]

If the moving party establishes there are no factual issues, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact exists for trial.[33] The non-moving party must then "go beyond the pleadings," and by affidavits or other competent summary judgment evidence, cite "specific facts" that show that there is a genuine issue for trial.[34] Additionally, it is not the duty of the court "to search the record for material fact issues."[35]

## Analysis

**A. Justification is a defense to tortious interference under Texas law.**

The Would-be Buyer's complaint is for tortious interference with contract. The Would-Be Buyer alleges that the Lender imposed unreasonable conditions on the release of its lien, sought reimbursement for excessive fees, and generally obstructed its purchase of the Property, thus tortiously interfering with the Contract.

A claim for tortious interference consists of four elements: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss."[36] The plaintiff need not show that the contract "was actually

---

[30] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[31] *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008) (citation omitted).
[32] *Moss,* 529 F. 3d at 584 (citation omitted).
[33] *See, e.g., Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010).
[34] *See Martini Club*, 599 F.3d at 468 (citing *Celotex*, 477 U.S. at 322); Fed. R. Civ. P. 56(c)(1).
[35] *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co*., 499 F. Supp. 3d 350, 361 (W.D. Tex. 2020); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).
[36] *Allegiance Expl., LLC v. Davis*, No. 02-13-00349-CV, 2016 WL 1164331, at *15 (Tex. App.—Fort Worth Mar. 24, 2016, pet. denied); *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000).

breached. *Any* interference that makes performance more burdensome or difficult or of less or no value to the one entitled to performance is actionable."[37]

But even if the plaintiff establishes all the elements for tortious inference with contract, the defendant "may still prevail upon establishing the affirmative defense of justification."[38] In general, the defense of justification "is established as a matter of law when the acts that the plaintiff complains of as tortious interference are merely the defendant's exercise of its own contractual rights."[39] In order to prevail on the justification defense, the defendant must prove either the exercise of "(1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken."[40] The defendant's motivation for interfering or the good faith behind the interference is not relevant if the allegedly tortious acts are exercises of the defendant's legal rights.[41] The justification defense protects both the actual and the threatened exercise of contractual rights.[42]

If the Court finds the Lender had a legal right to take the alleged actions that allegedly affected the Contract, then, as a matter of law, the Lender has established its justification defense.[43]

### B. The Lender has established its justification defense as a matter of law.

In moving for summary judgment based upon the defense of justification, the burden is on the Lender to prove the defense conclusively. The Lender has done so.

---

[37] *Allegiance Expl.*, 2016 WL 1164331, at *15.
[38] *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996).
[39] *Prudential*, 29 S.W.3d at 81.
[40] *Fluor Enterprises, Inc. v. Conex Intern. Corp.*, 273 S.W.3d 426, 445 (Tex. App.—Beaumont 2008, pet. denied) (citing *Texas Beef,* 921 S.W.2d at 211).
[41] *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017); *see also Texas Beef*, 921 S.W.2d at 212 ("[W]e disavow good faith as relevant to the justification defense when the defendant establishes its legal right to act as it did."). *Cf. AT&T Corp. v. S.W. Bell Tel. Co.*, No. 05-99-00186-CV, 2000 WL 14711, at *3 (Tex. App.—Dallas Jan. 11, 2000) ("The good faith of the defendant is legally significant only where the defendant asserts a mistaken, but colorable, claim of a legal right.").
[42] *Villaje Del Rio, Ltd. V. Colina Del Rio, LP*, No. 07-CA-947, 2009 WL 10670091, at *4 (W.D. Tex. Mar. 5, 2009).
[43] *See Texas Beef*, 921 S.W.2d at 211; *Prudential*, 29 S.W.3d at 81.

Under Texas law, once a loan is in default, and in absence of a contractual provision to the contrary,[44] a lender can proceed to foreclosure.[45] This is effectively all the Lender did here. It proceeded to foreclosure, and it was prevented from foreclosure only by the Debtor's filing for bankruptcy relief. Insofar as the Lender's march to foreclosure interfered with the Contract, it is protected by the defense of justification under governing Texas law.

Now, it is true that rather than simply proceeding to foreclosure, the Lender engaged in discussions and negotiations about payoff amounts and releases of liens, holding the door open to other outcomes short of foreclosure. The Lender is said to have inflated its payoff demands or insufficiently explained the amounts included in its payoff figures,[46] and it is said to have required expansive releases in order to agree to release its lien upon payoff.[47]

But even assuming all of this is true, none of it undermines the Lender's defense of justification. The Would-Be Buyer does not dispute that the loan was in default and that the Lender was within its rights to foreclose. To argue, as Would-Be Buyer did at the Hearing, that the loan contract did not explicitly provide for the Lender to ask for broad releases after default, and thus the Lender's conduct was not justified as an exercise of contractual rights, is to miss the point. The Lender was, as established above, permitted to proceed to foreclosure. This being so, its willingness to specify the terms on which it would refrain from exercising its legal rights can hardly be any more tortious than refusing to specify such terms at all.

---

[44] As noted, the Would-Be Buyer has pointed out no evidence showing the Lender had a contractual obligation, post-default, to provide payoffs or lien releases. The Court specifically inquired at the Hearing concerning the various duties that the Would-Be Buyer attributed to the Lender, but no basis for such duties was identified.

[45] *Abraham v. Ryland Mortg. Co.*, 995 S.W.2d 890, 892 (Tex. App.—El Paso 1999, no pet.) (denying a would-be buyer's tortious interference claim based on foreclosure when another purchase contract was pending, because lender established justification defense); *Rodriguez v. Ocwen Loan Servicing, Inc.*, No. H-07-4546, 2008 WL 239652, at *6 (S.D. Tex. Jan. 29, 2008) (denying a would-be buyer's tortious interference claim based on foreclosure for below payoff price when lender was aware of another pending contract).

[46] The Lender argues that the payoff figures cannot be the basis of the claim because Would-Be Buyer has admitted that it was willing to go forward with the Contract even with those numbers. Adv. Proc. Dkt. No. 21, ¶¶10-11. For purposes of this analysis, it does not appear to matter, but the Lender is correct. *See, e.g.*, Adv. Proc. Dkt. No. 20 at 6 (stating that Would-Be Buyer was willing to proceed even with the Lender's "inflated and unsubstantiated payoff amount").

[47] *See, e.g.*, Adv. Proc. Dkt. No. 20 at 5-6.

Notwithstanding all of this, the Would-Be Buyer insists that the Lender "had a duty imposed by statute, contract, and/or common law to provide an accurate payoff statement to its borrower so that the proposed property could be sold."[48] Elsewhere it refers to the Lender's "duty to provide a payoff statement and/or release title to the property in question without an accompanying release of liability and indemnity."[49] Yet again, it states that "[the Lender] had not only contractual and statutory duties to provide such a payoff statement, its actions in providing a payoff statement, entering into a Proposed Sale transaction, and otherwise facilitating a Proposed Sale created a common law duty to provide an accurate payoff statement to the Debtor."[50]

But in its briefing and in the Hearing, the Would-Be Buyer has identified no statute, contractual provision, or case law supporting the imposition of such duties. Texas law does not support the Would-Be Buyer. In fact, Texas courts have declined to imply a free-floating duty to provide payoff information at all, in absence of a contractual or statutory provision.[51] And in the absence of a contractual duty to the contrary, courts have found that a lender was justified in refusing to release a lien, after a default.[52]

---

[48] Adv. Proc. Dkt. No. 20 at 2.
[49] *Id*.
[50] *Id*. at 8.
[51] *Villarreal v. Carrington Mortg. Services, LLC*, No. 5-18-CV-00418, 2018 WL 6790651, at *4 (W.D. Tex. Nov. 5, 2018) ("While it is understandable that Plaintiffs might request a payoff statement to ascertain the amount they need to tender, they cannot assert a colorable breach of contract claim based on a contract term they cannot even locate in the governing document."), *report and recommendation adopted*, No. 18-CA-418, 2018 WL 6796092 (W.D. Tex. Dec. 13, 2018); *Graves v. Logan*, 404 S.W.3d 582, 586 (Tex. App.—Hous. [1st Dist.] 2010, no pet.) (noting lack of "any precedential authority to support the existence of an implied covenant to provide a payoff amount in a transaction involving a promissory note and deed of trust"). In addition, it is worth noting that the *Graves* case involved a request for payoff to effectuate a contractually recognized right to an early payoff, whereas no express contractual right has been identified as providing the foundation for the payoff request to the Lender in this Adversary Proceeding. Further, any contractual obligation to provide a payoff might be inapplicable *after default*. See *Water Dynamics, Ltd. v. HSBC Bank USA, Nat'l Ass'n*, 509 F. App'x 367, 369 (5th Cir. 2013) (unpublished) (holding the principle that "a party in default cannot assert a claim for breach against the other party" is an "unassailable defense[ ]" to an allegation of breach of contract for failing to provide payoff statement when requested).
[52] *See, e.g.*, *Mora v. Compass Bank*, No. M-11-354, 2012 WL 13048534, at *4–5 (S.D. Tex. Sept. 4, 2012).

The Would-Be Buyer has not identified any evidence of bad faith on the part of the Lender. Indeed, the lien release terms demanded by the Lender and complained of by the Would-Be Buyer seem to be commercially reasonable, borne largely out of a desire to avoid future litigation with the Debtor and various of its affiliates, managers, and so on. At worst, the Would-Be Buyer alleges that "[the Lender] hoped that the sale would be frustrated by these outrageous requests so that it could foreclose and reap the benefits of a rapidly increasing real estate market in San Antonio."[53] But such a motivation, even if proven—and to be clear, the Would-Be Buyer identifies no evidence for it—would not undermine the Lender's defense of justification. "[M]otives are irrelevant if a party is privileged to interfere with another's contract."[54]

The Court is bound by governing Texas law, which clearly supports the Lender. It has established its defense of justification and is entitled to summary judgment.

**C. Relief under Rule 56(d) is not warranted.**

In its Response, the Would-Be Buyer sought a delay in determination of the Summary Judgment Motion on grounds that further discovery was needed, as permitted by Federal Rule of Civil Procedure 56(d).[55] The Fifth Circuit has explained this Rule as follows:

> To win on [a Rule 56(d)] motion, [the movant] must "show (1) why [it] needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001). It's not enough to "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." [*Am. Family Life Assurance Co. of Columbus v.*] *Biles*, 714 F.3d [887,] 894 [(5th Cir. 2013)] (quotations and citation omitted). Instead, [it] "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quotations and citation omitted). [The movant] "must also have diligently pursued

---

[53] Adv. Proc. Dkt. No. 20b at 3.
[54] *AT&T Corp.*, 2000 WL 14711, at *4 (citing *Texas Beef*, 921 S.W.2d at 212).
[55] Fed. R. Civ. P. 56(d), made applicable to this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7056.

ORDER GRANTING SUMMARY JUDGMENT 10

discovery." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017) (quotations and citation omitted).[56]

The Court is granted discretion to determine whether to grant relief under Rule 56(d).[57]

The Court's judgment is that no further delay to permit discovery is warranted. Leaving aside the issue of whether the Would-Be Buyer's explanation of its failure to pursue discovery diligently is sufficiently compelling,[58] there simply has been no demonstration that "specified facts" likely to emerge in discovery would "influence the outcome" of this proceeding. The Would-Be Buyer's general assertions that discovery will uncover evidence that will support its claims are not enough.[59]

In addition, as noted above, legal proceedings concerning the Lender's conduct with respect to the Contract—including a case in which the Would-Be Buyer intervened—have been pending since 2021.[60] The Court very much doubts that additional delay would bring out any new material evidence.

Ultimately, leaving aside the present lack of evidence, even taking the Would-Be Buyer's factual *allegations* in the complaint and in the summary judgment Response as true, the defense of justification would hold. The Lender has established that it was acting within its rights. To delay resolution of the Summary Judgment Motion for additional discovery would be merely to sanction a speculative fishing expedition.

---

[56] *January v. City of Huntsville*, 74 F.4th 646, 651 (5th Cir. 2023).
[57] *Biles*, 714 F.3d at 894-95.
[58] Adv. Proc. Dkt. No. 20 at 1, 7-10. The Would-Be Buyer claims that the Lender represented that "it was potentially interested in settlement" and mediation, and that the Would-Be Buyer "relied on these representations and did not … promptly engage in discovery …." *Id*. at 1.
[59] Further supporting this judgment: Would-Be Buyer did not seek to supplement its summary judgment briefing between October 20, when it submitted its Response, and December 14 when the Court held the Hearing; nor did it bring any significant additional evidence to the Court's attention at the Hearing; nor did it offer any compelling additional reasons for delay at the Hearing. It does appear that several depositions are apparently pending, *see* Dkt. No. 29, ¶2, but the Court does not believe that there is any reasonable possibility of material evidence sufficient to affect this summary judgment coming to light.
[60] *See generally 639 Lanark, LLC*, 2023 WL 8531544, at *2-3 (describing related actions).

ORDER GRANTING SUMMARY JUDGMENT 11

## Conclusion

For the reasons stated above, the Lender has established the defense of justification under Texas law.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

A. Would-Be Buyer's Rule 56(d) Motion is **denied**;

B. The Lender is entitled to judgment as a matter of law on the affirmative defense of justification and consequently, the Lender's Motion for Summary Judgment is **granted**; and

C. The Plaintiff's cause of action for tortious interference is **dismissed with prejudice**, and there being no further causes of action, Plaintiff's Original Petition is **dismissed with prejudice**.

# # #